**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| JANE DOE, | ) | Case No. 3:26-cv-02311 |
| Plaintiff, | ) | |
| v. | ) | Jury Trial Demanded |
| REGINALD MCKINNEY, Individually, T.K. WATERS in his official capacity as Sheriff of Jacksonville, and the CITY OF JACKSONVILLE, | ) | |
| Defendants. | ) | |

---

**FIRST AMENDED COMPLAINT**

NOW COMES Plaintiff JANE DOE ("PLAINTIFF"), by and through her undersigned counsel, and hereby sues Defendants REGINALD MCKINNEY, SHERIFF T.K. WATERS in his official capacity as the Sheriff of Jacksonville, Duval County, Florida (hereinafter "WATERS"), and the CITY OF JACKSONVILLE ("JACKSONVILLE"), and in support thereof alleges as follows:

**INTRODUCTION**

1. This case concerns a law enforcement officer who abused the power entrusted to him by the public. During a routine traffic stop, Defendant MCKINNEY, a Jacksonville Sheriff's Office ("JSO") Deputy employed by Defendant JACKSONVILLE, used the threat of arrest and the authority of his office to isolate a 23-year-old woman, PLAINTIFF, turn off his body-worn camera, and pursue his own personal and sexual interests. Defendant MCKINNEY's conduct violated PLAINTIFF's constitutional rights, deprived her of her liberty, and caused lasting

emotional and psychological harm.

2. Defendant MCKINNEY's deliberate, intentional, and brazen acts of sexual harassment and sexual assault occurred because Defendant WATERS and Defendant JACKSONVILLE had a pattern, practice, custom and policy of failing to train and supervise their employees.

**PARTIES**

3. At all times material hereto, PLAINTIFF was and is an individual residing in DUVAL County, Florida and is in all respects *sui juris*.

4. PLAINTIFF is presently 25 years-old, and was 23-years-old during all times material and relevant hereto.

5. At all times material hereto, Defendant MCKINNEY was an employee of Defendant JACKSONVILLE as a sworn law enforcement officer for the JSO, and was acting within the scope of his employment and under the color of law.

6. At all times material hereto, Defendant WATERS was the elected Sheriff of Jacksonville, responsible for the policies, practices, and customs of the JSO, and is the final policymaker of the same. Defendant WATERS is being sued in his official capacity both directly and under the legal theory of *respondeat superior.*

7. At all times material hereto, Defendant JACKSONVILLE was a consolidated municipal agency, consisting of the City of Jacksonville and Duval County, and was and is responsible for the JSO, a law enforcement agency. Defendant JACKSONVILLE is being sued both directly and under the legal theory of *respondeat superior*.

**JURISDICTION AND VENUE**

8. This action arises under: the Constitution of the United States, particularly the

Fourth and Fourteenth Amendments; the laws of the United States, specifically the Civil Rights Act and Title 42 of the United States Code, Sections 1983 and 1988; and the laws of the State of Florida.

9. The jurisdiction of this Court is invoked under the provisions of Title 28 of the United States Code, Sections 1331 and 1343. PLAINTIFF also invokes the supplemental jurisdiction of this Court pursuant to Title 28 of the United States Code, Section 1367.

10. Venue is proper in the Middle District of Florida, Jacksonville Division, under Title 28 of the United States Code, Section 1391(b)(2), as the events giving rise to this litigation occurred within this district, specifically Jacksonville, Duval County, Florida.

11. Notice has been given to Defendant JACKSONVILLE and the Department of Financial Services pursuant to section 768.28(6) of the Florida Statutes, without conceding that the Defendant is entitled to any type of sovereign immunity, or that it is entitled to the damage limitations of section 768.28 of the Florida Statutes. A copy of the notice letters and the return receipt cards, which show the date of receipt, are attached hereto as Composite Exhibit "A." More than six (6) months have elapsed since notice was given to the Defendant and the Department of Financial Services of the claim herein.

## FACTUAL ALLEGATIONS

*The September 4, 2024 Imprisonment, Assault and Battery of*

12. PLAINTIFF is a resident of Duval County, Florida.

13. At all times material hereto, Defendant MCKINNEY was a sworn law enforcement officer employed by the JSO and acting under color of state law.

14. At all material times, Defendant MCKINNEY was operating a marked patrol vehicle and was dressed in full law enforcement uniform, while acting within the course and scope of his employment as a deputy sheriff.

15. On or about September 4, 2024, PLAINTIFF was operating her vehicle in Jacksonville, Duval County, Florida.

16. At approximately 1:19 a.m., Defendant MCKINNEY initiated a traffic stop of PLAINTIFF's vehicle.

17. PLAINTIFF promptly pulled over and complied with Defendant MCKINNEY's instructions.

18. Defendant MCKINNEY was the sole occupant of the patrol vehicle and was acting alone throughout the incident.

19. At no time during the encounter was another law enforcement officer present to observe Defendant MCKINNEY's conduct or provide assistance.

20. During the encounter, Defendant MCKINNEY intentionally deactivated his body-worn camera before engaging in the conduct alleged herein, and informed PLAINTIFF that he was doing so.

21. Defendant MCKINNEY informed PLAINTIFF that her driver's license was suspended and there was an order to seize her vehicle tag.

22. Defendant MCKINNEY further informed PLAINTIFF that he had the authority to arrest her, but then stated that he was not going to do so.

23. PLAINTIFF understood Defendant MCKINNEY to be a law enforcement officer acting in his official capacity, and believed he possessed the authority to arrest her.

24. During the traffic stop, Defendant MCKINNEY began making comments regarding PLAINTIFF's physical appearance.

25. Defendant MCKINNEY repeatedly told PLAINTIFF that she was "fine" and "hot," and made other comments indicating his personal and sexual interest in her.

26. Defendant MCKINNEY instructed PLAINTIFF to exit her vehicle and accompany him to his patrol vehicle.

27. Once there, Defendant MCKINNEY showed PLAINTIFF information on his computer regarding her driver's license and vehicle registration, informing her that he should be placing her under arrest because her license was suspended.

28. Defendant MCKINNEY continued making comments regarding PLAINTIFF's appearance and attractiveness.

29. Defendant MCKINNEY asked PLAINTIFF for her telephone number.

30. Defendant MCKINNEY then informed PLAINTIFF that he wanted a hug.

31. Defendant MCKINNEY next instructed PLAINTIFF to follow him to another location away from the traffic stop.

32. PLAINTIFF did not feel free to refuse Defendant MCKINNEY's requests or instructions, because she was under the belief that she was to be arrested for driving on a suspended license.

33. PLAINTIFF feared that Defendant MCKINNEY would arrest her if she failed to comply.

34. PLAINTIFF further feared Defendant MCKINNEY because he informed her that he had turned off his body-worn camera.

35. Acting under the authority of his position as a law enforcement officer, Defendant MCKINNEY directed PLAINTIFF to follow him to a secluded location several blocks away from the original traffic stop.

36. PLAINTIFF complied with Defendant MCKINNEY's instructions because she feared arrest and believed she had no meaningful choice but to obey.

37. Upon arriving at the secluded location, Defendant MCKINNEY exited his patrol vehicle and approached PLAINTIFF.

38. Defendant MCKINNEY again requested a hug from PLAINTIFF.

39. PLAINTIFF complied because she remained fearful of Defendant MCKINNEY and the circumstances he had created.

40. While hugging PLAINTIFF, Defendant MCKINNEY intentionally touched PLAINTIFF's buttocks and groin area without her consent.

41. Defendant MCKINNEY acted intentionally, willfully, maliciously, and in reckless disregard of PLAINTIFF's constitutional rights and personal dignity.

42. Defendant MCKINNEY subsequently requested that PLAINTIFF meet him at a later time to have "fun" while he was off duty.

43. After the encounter, PLAINTIFF returned home, terrified, devastated, and emotionally distressed.

44. In the early morning hours following PLAINTIFF's encounter with Defendant MCKINNEY, and after PLAINTIFF had returned home, PLAINTIFF received multiple text messages from Defendant MCKINNEY on her personal cell phone, thus further increasing her terror and emotional distress.

45. PLAINTIFF immediately reported the incident to family members.

46. PLAINTIFF thereafter reported Defendant MCKINNEY's conduct to law enforcement authorities.

47. An internal investigation and criminal investigation were initiated.

48. During the investigation, law enforcement reviewed Defendant MCKINNEY's body-worn camera footage.

49. The footage showed Defendant MCKINNEY interacting with PLAINTIFF during the traffic stop, and later turning off his body-worn camera.

50. GPS data and video surveillance corroborated that Defendant MCKINNEY and PLAINTIFF traveled from the original traffic stop location to the secondary, secluded location identified by PLAINTIFF.

51. Defendant MCKINNEY was subsequently arrested and charged with felony false imprisonment and misdemeanor battery arising from the events described herein.

52. As a result of Defendant MCKINNEY's conduct, PLAINTIFF suffered humiliation, embarrassment, emotional distress, fear, anxiety, mental anguish, loss of trust in law enforcement, and other damages.

53. Since the incident, PLAINTIFF has experienced ongoing fear and anxiety when encountering law enforcement officers.

54. PLAINTIFF continues to suffer emotional and psychological harm as a direct and proximate result of Defendant MCKINNEY's actions.

*The Widespread Policies and Practices of the JSO in Violation of the Constitution*

55. The misconduct of Defendant MCKINNEY, described in detail above, was undertaken pursuant to the policies and practices of the JSO, which is an environment that at all

material times hereto was and is rampant with sexual harassment and abuse, both within its ranks and towards civilians.

56. PLAINTIFF was a victim of the JSO's policy and practice of failing to provide training, or failing to properly train its employees, concerning the prohibition of sexual harassment and abuse.

57. PLAINTIFF was a victim of the JSO's policy and practice of failing to supervise, or failing to properly supervise its employees, concerning the prohibition of sexual harassment and abuse.

58. Beginning in 2017, the JSO was aware of the following instances in which JSO employees engaged in sexual harassment and abuse, both on and off-duty:

a. In January and February 2017, on-duty JSO Officer Calvin Johnson, Star No. 74897, sexually harassed multiple female JSO employees, including using sexually explicit language, and he unlawfully and without consent touched at least one employee, kissing her;

b. On August 6, 2017, off-duty JSO Officer Thomas McDonald, Star No. 6491, was credibly accused of committing battery by a civilian, in that he unlawfully and without consent touched that civilian's breast;

c. From approximately December 2019 through March 2022, JSO employee Allen Baggs, Star No. 69200, sexually harassed and stalked a fellow JSO employee, including multiple instances in which he physically touched the employee, and repeatedly engaged in conversations in the employee's presence wherein he was sexually explicit and lewd by discussing sex with other female employees;

d. Beginning in 2020 and continuing through 2022, JSO Officer John A. Veale, Star No. 66109 sexually harassed multiple JSO female employees by messaging sexually explicit and vulgar communications via social media, without their consent and against their wishes;

e. On October 2, 2020, JSO Officer M.A. Jones, Star No. 78167, was reported to JSO's Internal Affairs for allegations that he sexually and physically assaulted an individual, and that he utilized his JSO-issued laptop for non-work purposes, specifically researching "high school friends;"

f. On June 9, 2021, it was reported to JSO's Internal Affairs that on-duty JSO Officers Brian R. Housend, Star No. 19203, and Yesenia Garcia, Star No. 82618, had engaged in on-duty sexual activity;

g. On August 2, 2021, on-duty JSO Officer Christopher Stanley, Star No. 79501, responding to a female civilian's call for service related to "Dating Violence," showed the reporting female civilian an image on his phone of his penis, and thereafter continued to contact this same female civilian on her personal cell phone, sending her sexually explicit messages, for several days after this encounter. During the original call for service, Stanley muted his body-worn camera on multiple occasions;

h. From approximately February 2021 through November 2021, on-duty JSO Lieutenant Joel Van Delinder, Star No. 7623, sexually harassed multiple employees, both women and men, under his command, including: parading around the JSO office in his underwear; sticking an object in his underwear to make the appearance of a prominent bulge; pulling his testicles out of his pants

on multiple occasions, referring to his actions as a "Texas Belt Buckle"; and referring to his subordinates as "f*ggots";

i. Throughout the year of 2022, JSO Officer Walter Roberts, Star No. 6615, engaged in sexually vulgar and harassing conduct in the presence of other officers, including female officers, which he glibly mischaracterized as "joking." Said conduct included taking off his shirt and straddling another JSO officer; targeting officers' genitals with balls and other objects that he threw at them; and making sexually explicit comments on a regular basis.

j. On January 20, 2022, on-duty JSO Officer Michael Starling, Star No. 7642, passed an unsolicited, sexually vulgar note to a female JSO employee, alluding to sexual conduct therein, and thereafter propositioned the same female JSO employee to come to his home the following day – the presumption being to engage in said alluded-to sexual conduct.

k. On March 15, 2022, JSO Officer Alejandro Carmona-Fonseca was arrested by the Clay County Sheriff's Office, and in June 6, 2022 he was re-arrested by the Department of Justice, indicted, and ultimately pled guilty for attempted enticement of a minor to engage in sexual activity. During the course of the CCSO's investigation, it was revealed that Carmona-Fonseca and two other JSO Officers, Michael Simmons, Star No. 76061, and Margaret M. Heekin, Star No. 83437, had photographed and videotaped themselves engaged in sexual acts whilst on-duty, in their JSO uniforms.

l. In October 2022, on-duty JSO Officers Phillip Massicotte, Star No. 78585, and Christina Schoenhofen, Star No. 82706, engaged in sexual activities on multiple occasions, while in JSO uniforms and in a JSO vehicle.

59. As evidenced by these specific instances of sexual harassment, misconduct, and abuse continuously and regularly occurring in the JSO, the JSO had a widespread practice among officers, employees and agents of the JSO that condoned, allowed or otherwise turned a blind eye to the sexual harassment of and sexual misconduct toward both civilians and other JSO employees at the hands of its employees.

**COUNT I**
**42 U.S.C. § 1983**
**Fourth Amendment Violation**
**Defendant MCKINNEY**

60. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

61. At all times material hereto, Defendant MCKINNEY was acting under the color of state law as a sworn deputy sheriff employed by the JSO.

62. The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures by government officials.

63. PLAINTIFF had a clearly established constitutional right to be free from unreasonable seizures, arbitrary detention, and the continued exercise of police authority for an unconstitutional purpose.

64. Defendant MCKINNEY used his authority as a law enforcement officer and the threat of arrest to coerce PLAINTIFF's compliance with his demands.

65. Defendant MCKINNEY instructed PLAINTIFF to exit her vehicle, accompany him to his patrol vehicle, and thereafter follow him to a secluded location away from the original traffic stop.

66. PLAINTIFF reasonably believed she was not free to leave or refuse Defendant MCKINNEY's directives.

67. Defendant MCKINNEY intentionally used his authority as a law enforcement officer to restrain PLAINTIFF's liberty and control her movements for his own personal purposes.

68. Defendant MCKINNEY further violated PLAINTIFF's constitutional rights by subjecting her to unwanted sexual touching while acting under the color of law.

69. Defendant MCKINNEY's conduct constituted an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

70. Defendant MCKINNEY's conduct further violated PLAINTIFF's clearly established rights to bodily integrity and personal security.

71. At the time of the events described herein, it was clearly established that a law enforcement officer may not use the authority of his office, the threat of arrest, or a detention under the color of law, to obtain sexual contact or personal favors from a citizen.

72. A reasonable law enforcement officer in Defendant MCKINNEY's position would have known that such conduct violated PLAINTIFF's constitutional rights.

73. As a direct and proximate result of Defendant MCKINNEY's actions, PLAINTIFF suffered emotional distress, humiliation, embarrassment, fear, anxiety, mental anguish, loss of dignity, and other damages.

74. Defendant MCKINNEY acted intentionally, maliciously, willfully, wantonly, and with reckless disregard for PLAINTIFF's federally protected rights, thereby entitling PLAINTIFF to an award of punitive damages.

**WHEREFORE**, PLAINTIFF demands judgment against Defendant MCKINNEY for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT II**
**42 U.S.C. § 1983**
**Fourteenth Amendment Violation**
**Defendant MCKINNEY**

75. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

76. At all times material hereto, Defendant MCKINNEY was acting under the color of law as a sworn deputy sheriff employed by the JSO.

77. While acting under color of law, and within the scope of his employment as a sworn deputy sheriff employed by the JSO, Defendant MCKINNEY violated PLAINTIFF's substantive due process rights – specifically, her right to bodily integrity.

78. The conduct by Defendant MCKINNEY violated PLAINTIFF's rights under the Fourteenth Amendment.

79. As a result of the violation of her rights, PLAINTIFF suffered damages.

**WHEREFORE**, PLAINTIFF demands judgment against Defendant MCKINNEY for compensatory damages, punitive damages, attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT III**
**State Claim**
**ASSAULT**
**Defendant MCKINNEY**

80. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 of this Complaint as though fully set forth herein.

81. At all material times, Defendant MCKINNEY intentionally made PLAINTIFF fearful of Defendant MCKINNEY making, and did in fact make, harmful and/or offensive physical contact with PLAINTIFF without her consent.

82. While acting under the color of law and during the course of PLAINTIFF's detention, Defendant MCKINNEY intentionally touched PLAINTIFF's body in a manner that a reasonable person would find offensive.

83. PLAINTIFF did not consent to Defendant MCKINNEY's touching. Any apparent acquiescence by PLAINTIFF was the product of Defendant MCKINNEY's exercise of his authority as an armed, uniformed law enforcement officer during PLAINTIFF's detention, and was not voluntary nor consensual.

84. Defendant MCKINNEY's conduct was intentional and willful.

85. The aforementioned acts of battery by Defendant MCKINNEY against PLAINTIFF resulted in PLAINTIFF's reasonable apprehension of immediate harm and offensive contact.

86. As a direct and proximate result of Defendant MCKINNEY's assault, PLAINTIFF suffered emotional distress, mental anguish, humiliation, embarrassment, fear, loss of dignity, and other damages, both past and future.

**WHEREFORE,** PLAINTIFF demands judgment against Defendant MCKINNEY for compensatory damages, taxable costs, prejudgment interest where permitted by law, and such

other and further relief as the Court deems just and proper. PLAINTIFF further demands trial by jury on all issues so triable.

**COUNT IV**
**State Claim**
**BATTERY**
**Defendant MCKINNEY**

87. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 of this Complaint as though fully set forth herein.

88. At all material times, Defendant MCKINNEY intentionally made harmful and/or offensive physical contact with PLAINTIFF without her consent.

89. While acting under the color of law and during the course of PLAINTIFF's detention, Defendant MCKINNEY intentionally touched PLAINTIFF's body in a manner that a reasonable person would find offensive.

90. PLAINTIFF did not consent to Defendant MCKINNEY's touching. Any apparent acquiescence by PLAINTIFF was the product of Defendant MCKINNEY's exercise of his authority as an armed, uniformed law enforcement officer during PLAINTIFF's detention, and was not voluntary nor consensual.

91. Defendant MCKINNEY's conduct was intentional and willful.

92. As a direct and proximate result of Defendant MCKINNEY's battery, PLAINTIFF suffered bodily injury, emotional distress, mental anguish, humiliation, embarrassment, fear, loss of dignity, and other damages, both past and future.

**WHEREFORE,** PLAINTIFF demands judgment against Defendant MCKINNEY for compensatory damages, taxable costs, prejudgment interest where permitted by law, and such other and further relief as the Court deems just and proper. PLAINTIFF further demands trial by jury on all issues so triable.

**COUNT V**
**State Claim**
**FALSE IMPRISONMENT**
**Defendant MCKINNEY**

93. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

94. Defendant MCKINNEY intentionally restrained PLAINTIFF against her will and without lawful authority.

95. Although Defendant MCKINNEY initially conducted a lawful traffic stop, he unlawfully extended and expanded PLAINTIFF's detention.

96. Defendant MCKINNEY informed PLAINTIFF that he had the authority to arrest her and repeatedly referenced his ability to take her into custody.

97. Defendant MCKINNEY used his position as a law enforcement officer, the threat of arrest, and the authority of his office to compel PLAINTIFF's compliance with his instructions and demands.

98. Defendant MCKINNEY instructed PLAINTIFF to exit her vehicle, accompany him to his patrol vehicle, and thereafter follow him to a secluded location away from the original traffic stop.

99. Based on Defendant MCKINNEY's words and actions, PLAINTIFF reasonably believed she was not free to leave, disregard Defendant MCKINNEY's instructions, or terminate the encounter.

100. PLAINTIFF complied with Defendant MCKINNEY's directives because she feared arrest and further consequences if she refused.

101. Defendant MCKINNEY intentionally restricted and controlled PLAINTIFF's movement without lawful justification and for his own personal purposes.

102. Defendant MCKINNEY's conduct was willful, wanton, malicious, and undertaken in conscious disregard of PLAINTIFF's rights.

103. As a direct and proximate result of Defendant MCKINNEY's conduct, PLAINTIFF suffered emotional distress, humiliation, embarrassment, fear, anxiety, mental anguish, loss of dignity, and other damages.

**WHEREFORE**, PLAINTIFF demands judgment against Defendant MCKINNEY for compensatory damages, punitive damages, taxable costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

**Count VI**
**42 U.S.C. § 1983 – *Monell***
**Defendants JACKSONVILLE and WATERS**

104. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

105. As described in this Complaint, Defendant MCKINNEY, acting under the color of law and within his official capacity as a JSO Officer, violated and deprived PLAINTIFF of her clearly established and well-settled constitutional rights.

106. The violations of PLAINTIFF's rights were proximately caused by the policies, practices, and customs of the JSO.

107. Defendant WATERS is the final policymaker for the JSO, and is responsible for the hiring, retention, training, supervision, and discipline of employees of the JSO.

*Failure to Train*

108. Defendants JACKSONVILLE and WATERS failed to properly train Defendant MCKINNEY and other employees with respect to appropriate and proper workplace conduct,

including but not limited to sexual harassment and sexual misconduct policies and practices.

109. Defendants JACKSONVILLE and WATERS, knowing or having reason to know that JSO employees needed training in these areas, acted with a deliberate indifference when they failed to provide such training.

110. The failure to provide such training was the moving force and proximate cause of PLAINTIFF's injury.

*Failure to Supervise*

111. Defendants JACKSONVILLE and WATERS failed to properly supervise Defendant MCKINNEY and other employees with respect to appropriate and proper workplace conduct, including but not limited to sexual harassment policies and practices.

112. Prior to Defendant MCKINNEY's assault, battery and false imprisonment of PLAINTIFF, there were multiple instances of JSO Officers and employees engaging in sexual harassment and sexual misconduct.

113. Defendants JACKSONVILLE and WATERS, knowing or having reason to know of the systemic issues of sexual harassment and sexual misconduct being rampant within the JSO, failed to implement polices or procedures to prevent this type of misconduct in the future.

114. Defendants JACKSONVILLE and WATERS, knowing or having reason to know that policies and additional supervision in the area was necessary for JSO employees, acted with a deliberate indifference when they failed to implement provide such training.

115. The failure to implement sexual harassment and sexual misconduct policies, and the failure to provide such supervision, was the moving force and proximate cause of PLAINTIFF's injury.

**WHEREFORE**, PLAINTIFF demands judgment against Defendants JACKSONVILLE and WATERS for compensatory damages, punitive damages, taxable costs, pre-judgment and post-judgment interest, and such other relief as the Court deems just and proper.

**COUNT VII**
**State Claim**
**Indemnification**
**Defendant JACKSONVILLE**

116. PLAINTIFF realleges and incorporates by reference Paragraphs 1 through 59 as though fully set forth herein.

117. As described in this Complaint, Defendant MCKINNEY acted within the scope of his employment with the JSO.

118. Pursuant to Florida Statute § 768.28, Defendant JACKSONVILLE is required to indemnify the JSO for any judgment against a sheriff or sheriff's employee for acts or omissions done within the scope of their employment and is required to indemnify any employee for any judgment for acts or omissions done within the scope of their employment.

**WHEREFORE**, PLAINTIFF prays that Defendant JACKSONVILLE be required to indemnify Defendants MCKINNEY and WATERS for any award of compensatory damages, attorneys' fees, and costs.

**JURY DEMAND**

PLAINTIFF JANE DOE demands a trial by jury.

Dated: October 2, 2026

By: *_/s/ Kelly M. Olivier_*
One of the Attorneys for Plaintiff

Kelly M. Olivier
Allyson L. West
Jaclyn Fortini
Hale Law LLC (f/k/a Hale & Monico LLC)
Themis: Trial by Women of Hale Law LLC
53 W. Jackson Blvd., Suite 334
Chicago, IL 60654
(312) 564-4924
kolivier@halemonico.com
awest@halemonico.com
jacifortini@ahalelaw.com

Mary Sherris, Esq
Florida Bar No. 0138134
SHERRIS LEGAL, P.A.
121 South Orange Avenue, Suite 1500
Orlando, FL 32801
Phone: (407) 999-9955
Fax: (407) 999-9495
E-mail: service@sherrislegal.com
msherris@sherrislegal.com